# EXHIBIT "A"

# City of Philadelphia

City Council
Chief Clerk's Office
402 City Hall
Philadelphia, PA  19107

## Legislation Text

**File #:** 200294, **Version:** 1

Amending various sections of The Philadelphia Code to address matters related to the landlord and tenant relationship during the novel coronavirus of 2019 pandemic and otherwise, including providing for an eviction diversion program, and making certain technical changes, all under certain terms and conditions.

*THE COUNCIL OF THE CITY OF PHILADELPHIA HEREBY ORDAINS:*

SECTION 1.

The Council of the City of Philadelphia hereby makes the following legislative findings:

1. On March 6, 2020, in response to the 2019 novel coronavirus disease, COVID-19, the Governor of Pennsylvania issued a Proclamation of Disaster Emergency.

2. On March 11, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak a global pandemic, defined as the worldwide spread of a new virus for which most people do not have immunity.

3. On March 19, 2020, the Governor of Pennsylvania and Pennsylvania Secretary of Health ordered all non-life-sustaining businesses in Philadelphia and the surrounding counties to close their physical locations to slow the spread of COVID-19.

4. On March 22, 2020, the Mayor and the Commissioner of Public Health jointly issued their second Emergency Order Temporarily Prohibiting Operation of Non-Essential Businesses and Congregation of Persons to Prevent the Spread COVID-19, which remains in effect.

5. On March 23, 2020, the Governor of Pennsylvania issued a Stay at Home Order that applies to Philadelphia and numerous surrounding counties.

6. The local and state orders shut down or reduced the operations of many businesses in Philadelphia. 99.7% of Greater Philadelphia's economy consists of small businesses.

7. On March 16, 2020, the Supreme Court of Pennsylvania issued Orders to prevent the Judiciary from effectuating an eviction, ejectment or other displacement from a residence. The Supreme Court extended these Orders on April 28, 2020. On May 7, 2020, Governor Wolf signed an executive order staying foreclosure and eviction notice requirements for 60 days, thereby tolling the ability to commence the timelines necessary for the initiation of foreclosure and eviction proceedings until July 10, 2020. On May 21, 2020, Governor Wolf amended the May 7, 2020 executive order to apply the revised notice provisions only to matters involving the nonpayment of monies and proceedings related to removal of any tenant solely because the tenant has held over or exceeded the term of a lease.

8. The City of Philadelphia is one of the most densely populated cities in the United States of America

File #: 200294, **Version:** 1

with an estimated population size of 1.5 million.

9. Philadelphia is also one of the poorest cities in America, where 24.5% or 377,116 Philadelphia residents, live in poverty.

10. Philadelphia has a high population of renters. The number of renters in Philadelphia has rapidly increased in recent years, growing from 40.7% in 2000 to almost half of the population today.

11. Before the pandemic, Philadelphia had the 4th highest eviction rate among large cities, with 1 out of every 14 renters facing eviction each year.

12. More than 300,000 of Philadelphia's renters struggled to afford rent before the COVID-19 pandemic. In 2017, 53.4% of Philadelphia renters were cost-burdened, meaning they pay more than 30% of their income on rent, and 31% of Philadelphia renters were severely cost-burdened, meaning they spent more than 50% of their income on rent.

13. To address the city's affordable housing crisis, Philadelphia City Council established a Tenant Legal Defense Fund in 2017, an anti-eviction task force in 2017, and right to counsel in 2019 to address evictions.

14. The number of Philadelphians struggling to pay rent has undoubtedly increased since the onset of the COVID-19 pandemic, as at least 1.9 million Pennsylvanians and over 120,000 Philadelphians have filed for unemployment since March 2020, exacerbating already-existing financial burdens.

15. When the judicial emergency is lifted, there is an estimated backlog of 5,000 eviction cases in Philadelphia Municipal Court.

16. The average annual cost for the City of Philadelphia to provide shelter to a family of four is $58,000.

17. According to current projections from the Mayor's Office, as a result of the COVID-19 pandemic, the estimated revenue losses, federal reimbursements, and expense increases indicate that the City's Fiscal Year 2021 budget must include $649 million of reductions to planned spending, reduced reserves and new revenue sources compared to the original Fiscal Year 2021 budget, proposed on March 5th, 2020, to close the budget gap.

18. The Mayor's revised Fiscal Year 2021 budget, submitted to Council on May 1, 2020, included steep cuts to many affordable housing programs and initiatives that serve the City's most vulnerable populations, including reductions in funding for the preservation and construction of affordable housing units, rental assistance programs, low-income home repair programs, the Philly First Home program and the Philadelphia Eviction Prevention Project.

19. In May 2020, the City of Philadelphia used approximately $10 million in federal funds to create PHL Rent Assist, a rental assistance program that aimed to provide rental assistance to 3,000-4,000 families. Approximately 13,000 Philadelphians--four to five times the number of families that could be funded--applied for this program.

20. The COVID-19 pandemic's negative impact on the lives and incomes of Philadelphians, and City revenues, has exacerbated the pre-existing housing crisis and created a housing emergency in the City of

File #: 200294, Version: 1

Philadelphia. The measures identified below are necessary to ensure residents are able to remain in their homes, and small businesses are able to stay in business.

SECTION 2. Title 9 of The Philadelphia Code is hereby amended to read as follows:

TITLE 9. REGULATION OF BUSINESSES, TRADES AND PROFESSIONS

\* \* \*

CHAPTER 9-800. LANDLORD AND TENANT

§ 9-802. Definitions.

\* \* \*

(5) Unfair Rental Practice. Any act in violation of [§ 9-804.] *§§ 9-804 or 9-809.*

\* \* \*

*§ 9-809. COVID-19 Emergency Housing Protections.*

*(1)        Definitions. The following definitions apply to this Section 9-809 only:*

*(a) Certification of Hardship. A signed written statement, which may be signed by use of a typed electronic signature and provided electronically or may be provided in hard copy, that is subject to the provisions of Section 1-108 of the Code (Certification), and is submitted by an individual with personal knowledge of the facts set forth therein stating, at minimum, as follows, provided that any initial statements may be further supplemented with additional explanation, facts, or support at any time:*

*(i) In the case of a residential tenant, that a residential tenant has lost income due to the pandemic and setting forth facts that provide an explanation of the COVID-19 financial hardship suffered.*

*(ii) In the case of a commercial tenant, that a small business has suffered a small business financial hardship and setting forth facts supporting such financial hardship.*

*(b) COVID-19 emergency period. The period beginning on the date the ordinance adding Section 9-809 to the Code becomes law and ending August 31, 2020.*

*(c) COVID-19 financial hardship. A tenant's or tenant's household member's loss of income due to any one or more of the following during the COVID-19 emergency period or the retroactive emergency period:*

*(i)        A diagnosis of the disease caused by the 2019 novel Coronavirus, known as COVID-19.*

**File #:** 200294, **Version:** 1

   (ii)   The need to quarantine or self-quarantine due to the advice of a health care provider; due to symptoms of COVID-19, such as fever, dry cough, or shortness of breath; after the return of an individual to the United States after travel to a Tier 2 or Tier 3 country as defined by the United States Center for Disease Control ("CDC") with respect to COVID-19; or as the result of having come into contact with an individual who has been diagnosed with COVID-19.

   (iii)   The need to care for a family member or a member of the tenant's household as the result of such family or household member's diagnosis of COVID-19 or self-quarantine for purposes described in subparagraph 9-809(1)(c)(ii).

   (iv)   The need to care for a family member of a member of the tenant's household as the result of the closure of a school, daycare, adult care facility, or other care facility where care would otherwise be provided for such family or household member.

   (v)   The inability to work as the result of a requirement by the Governor, the Secretary of Health of the Commonwealth of Pennsylvania, the Mayor, or the Health Commissioner that businesses, or a particular type of business, must remain closed.

   (vi)   The inability to work as the result of such tenant or such tenant's household member being at a greater risk of harm than the general population if such person or such person's household member contracts COVID-19, such as those with compromised immune systems, the elderly, or those who have self-quarantined as the result of the recommendation of a health care professional, the CDC, the Governor, the Secretary of Health of the Commonwealth of Pennsylvania, the Mayor, or the Health Commissioner.

   (vii)   The inability to work as a result of a requirement by the Governor, the Secretary of Health of the Commonwealth of Pennsylvania, the Mayor, or the Health Commissioner that residents of certain areas of the Commonwealth must not travel, and such travel would be necessary to report to work.

   (viii)   The loss of a job, the reduction of work hours offered to such tenant or such tenant's household member, or a reduction in the salary or hourly wage paid to such tenant or such tenant's household member, whether permanent or temporary.

   (ix)   The inability to commence or obtain employment.

   (x)   The need to financially support a family member due to the family member or a household member of such family member's loss of income for any one or more of the reasons set forth in this paragraph 9-809(1)(c).
.
   (d)   Landlord.  An owner of a rental premises and any agent, or other person, operating or managing a rental premise on behalf of an owner.

   (e)   Retroactive emergency period.  The period beginning March 1, 2020 and continuing through the effective date of the ordinance adding this Section 9-809 to the Code.

   (f)   Small business. A person that employs fewer than 100 total employees, wherever located, whether within the City of Philadelphia or elsewhere.

**File #:** 200294, **Version:** 1

  *(g)*  Small business financial hardship.  A small business's documented loss of income due to one or more of the following during the COVID-19 emergency period or the retroactive emergency period:

    *(i)*  A requirement or recommendation by the Governor, the Secretary of Health of the Commonwealth of Pennsylvania, the Mayor, or the Health Commissioner that businesses in a particular area, or a particular type of business, remain fully or partially closed.

    *(ii)*  The owner or operator, a key employee, or a significant number of employees of the small business being unable to work as a result of the circumstances set forth in subparagraphs 9-809(1)(c)(i), (ii), (iii), (iv), (vi), or (vii).

    *(iii)*  The loss of customers or reduction of business from customers as a result of the COVID-19 pandemic, or related recommendations or requirements of the Governor, the Secretary of Health of the Commonwealth of Pennsylvania, the Mayor, or the Health Commissioner.

 *(2)*  Purpose.  This Section 9-809 shall apply in addition to any other provisions in this Chapter 9-800, or any provisions of a lease entered into between a tenant and landlord.  If the provisions of this Section 9-809 conflict with any other provisions of Chapter 9-800 or the provisions of any lease that otherwise governs a landlord tenant relationship, the provisions of this Section 9-809 shall control.

*(\*)*  Eviction Diversion Program.

  *(a)*  The Commission, or such other City department or office as the Mayor may designate, is authorized to establish a residential eviction diversion program consisting of the following:

    *(i)*  A conciliation conference between a landlord and tenant that has experienced a COVID-19 financial hardship to mediate an agreement for asserted residential lease violations.

    *(ii)* A designated mediator and housing counselor that participates in the conciliation conference.

    *(iii)* A designated housing counselor that engages with the tenant prior to the conciliation conference to educate and discuss available resources.

  *(b)*  Provided that this paragraph (b) expires on December 31, 2020, if the residential eviction diversion program authorized by this subsection, "Eviction Diversion Program," is implemented, from the date of such implementation no landlord shall take steps in furtherance of recovering possession of a residential property occupied by a tenant who has suffered a COVID-19 financial hardship other than providing a notice required under this Section 9-809 without first participating in a conciliation conference, including any requirements set forth in an applicable regulation, unless one of the following requirements are met:

    *(i)*  Eviction is necessary to cease or prevent an imminent threat of harm by the person being evicted, including physical harm or harassment; or

    *(ii)*  The landlord has provided the affected tenants notice

**File #:** 200294, **Version:** 1

*of such tenants' rights under this Section 9-809, and how to exercise such rights; and has contacted the eviction diversion program to schedule a conciliation conference but the program is unable to offer a date for a conciliation conference within thirty (30) days of the landlord's initial request to schedule; provided that such landlord shall thereafter participate in a conciliation conference when it becomes available, if prior to an eviction judgment being issued.*

*(\*)  Defenses.  The failure of the landlord to comply with any obligation under this Section 9-809 may be asserted as a defense by a tenant in an action before any adjudicatory body and may not be waived.*

*(\*)  Severability.  If any provision of this Section 9-809 or application thereof to any persons or circumstances is judged invalid by a court of competent jurisdiction, the invalidity shall not affect other provisions or applications of the Ordinance that can be given effect without the invalidated provision or application and to this end the provisions of the ordinance are declared severable.*

*      *      *

SECTION 3.  This ordinance shall be effective immediately.