# EXHIBIT "D"

# City of Philadelphia

City Council
Chief Clerk's Office
402 City Hall
Philadelphia, PA  19107

## Legislation Text

**File #:** 200304, **Version:** 1

Amending various sections of The Philadelphia Code to address matters related to the landlord and tenant relationship during the Coronavirus of 2019 pandemic and otherwise, including providing for relief to tenants who have been illegally locked out of their residences and making certain technical changes, all under certain terms and conditions.

*THE COUNCIL OF THE CITY OF PHILADELPHIA HEREBY ORDAINS:*

SECTION 1.

The Council of the City of Philadelphia hereby makes the following legislative findings:

1. On March 6, 2020, in response to the 2019 novel coronavirus disease, COVID-19, the Governor of Pennsylvania issued a Proclamation of Disaster Emergency.

2. On March 11, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak a global pandemic, defined as the worldwide spread of a new virus for which most people do not have immunity.

3. On March 19, 2020, the Governor of Pennsylvania and Pennsylvania Secretary of Health ordered all non-life-sustaining businesses in Philadelphia and the surrounding counties to close their physical locations to slow the spread of COVID-19.

4. On March 22, 2020, the Mayor and the Commissioner of Public Health jointly issued their second Emergency Order Temporarily Prohibiting Operation of Non-Essential Businesses and Congregation of Persons to Prevent the Spread COVID-19, which remains in effect.

5. On March 23, 2020, the Governor of Pennsylvania issued a Stay at Home Order that applies to Philadelphia and numerous surrounding counties.

6. The local and state orders shut down or reduced the operations of many businesses in Philadelphia. 99.7% of Greater Philadelphia's economy consists of small businesses.

7. On March 16, 2020, the Supreme Court of Pennsylvania issued Orders to prevent the Judiciary from effectuating an eviction, ejectment or other displacement from a residence. The Supreme Court extended these Orders on April 28, 2020. On May 7, 2020, Governor Wolf signed an executive order staying foreclosure and eviction notice requirements for 60 days, thereby tolling the ability to commence the timelines necessary for the initiation of foreclosure and eviction proceedings until July 10, 2020. On May 21, 2020, Governor Wolf amended the May 7, 2020 executive order to apply the revised notice provisions only to matters involving the nonpayment of monies and proceedings related to removal of any tenant solely because the tenant has held over or exceeded the term of a lease.

8. The City of Philadelphia is one of the most densely populated cities in the United States of America

File #: 200304, **Version:** 1

with an estimated population size of 1.5 million.

9. Philadelphia is also one of the poorest cities in America, where 24.5% or 377,116 Philadelphia residents, live in poverty.

10. Philadelphia has a high population of renters. The number of renters in Philadelphia has rapidly increased in recent years, growing from 40.7% in 2000 to almost half of the population today.

11. Before the pandemic, Philadelphia had the 4th highest eviction rate among large cities, with 1 out of every 14 renters facing eviction each year.

12. More than 300,000 of Philadelphia's renters struggled to afford rent before the COVID-19 pandemic. In 2017, 53.4% of Philadelphia renters were cost-burdened, meaning they paid more than 30% of their income on rent, and 31% of Philadelphia renters were severely cost-burdened, meaning they spent more than 50% of their income on rent.

13. To address the city's affordable housing crisis, Philadelphia City Council established a Tenant Legal Defense Fund in 2017, an anti-eviction task force in 2017, and right to counsel in 2019 to address evictions.

14. The number of Philadelphians struggling to pay rent has undoubtedly increased since the onset of the COVID-19 pandemic, as at least 1.9 million Pennsylvanians and over 120,000 Philadelphians have filed for unemployment since March 2020, exacerbating already-existing financial burdens.

15. When the judicial emergency is lifted, there is an estimated backlog of 5,000 eviction cases in Philadelphia Municipal Court.

16. The average annual cost for the City of Philadelphia to provide shelter to a family of four is $58,000.

17. According to current projections from the Mayor's Office, as a result of the COVID-19 pandemic, the estimated revenue losses, federal reimbursements, and expense increases indicate that the City's Fiscal Year 2021 budget must include $649 million of reductions to planned spending, reduced reserves and new revenue sources compared to the original Fiscal Year 2021 budget, proposed on March 5th, 2020, to close the budget gap.

18. The Mayor's revised Fiscal Year 2021 budget, submitted to Council on May 1, 2020, included steep cuts to many affordable housing programs and initiatives that serve the City's most vulnerable populations, including reductions in funding for the preservation and construction of affordable housing units, rental assistance programs, low-income home repair programs, the Philly First Home program and the Philadelphia Eviction Prevention Project.

19. In May 2020, the City of Philadelphia used approximately $10 million in federal funds to create PHL Rent Assist, a rental assistance program that aimed to provide rental assistance to 3,000-4,000 families. Approximately 13,000 Philadelphians--three to four times the number of families that could be funded-- applied for this program.

20. The COVID-19 pandemic's negative impact on the lives and incomes of Philadelphians, and City revenues, has exacerbated the pre-existing housing crisis and created a housing emergency in the City of

File #: 200304, **Version:** 1

Philadelphia. The measures identified below are necessary to ensure residents are able to remain in their homes, and small businesses are able to stay in business.

SECTION 2.  Title 9 of The Philadelphia Code is hereby amended to read as follows:

TITLE 9. REGULATION OF BUSINESSES, TRADES AND PROFESSIONS

\* \* \*

CHAPTER 9-800. LANDLORD AND TENANT

\* \* \*

§ 9-804.  Unfair Rental Practices.

\* \* \*

*(13) Self-Help Eviction. For the purposes of enforcement of Philadelphia Code Chapter 9-1600 Prohibition Against Unlawful Eviction Practices, any action by a landlord, or an agent or any other person on behalf of a landlord, in violation of Section 9-1603 is considered an unfair rental practice under this section 9-804.*

[(13)] *(14)*  Any person aggrieved under the provisions of this Section may file a complaint with the Fair Housing Commission or may allege any violations in an initial pleading or, where appropriate, in a responsive pleading in a court of competent jurisdiction.

[(14)] *(15)*  No provision of this Section can be waived or made subject to a contract between the parties depriving a tenant of the benefits of this Section.

\* \* \*

§ 9-807.  Penalty.

   (1)  Any person violating an order of the Commission or any provision of this Chapter [is subject to a fine of not less than fifty (50) dollars and of not more than three hundred (300) dollars together with costs of prosecution.] *shall be guilty of a Class III offense, and shall be subject to a fine as set forth in Section 1-109(3).*

\* \* \*

CHAPTER 9-1600. PROHIBITION AGAINST UNLAWFUL EVICTION PRACTICES

\* \* \*

§ 9-1603.  Unlawful Self-Help Eviction Actions Prohibited.

File #: 200304, **Version:** 1

   (1)     No landlord or landlord's agent may engage in self-help eviction practices, as defined in Section 9-1602 of this Chapter, under any circumstances, in the City of Philadelphia. The requisite, legal process for lawful eviction must consist of execution of a judgment of possession entered by a court of competent jurisdiction in accordance with State law. Lawful execution of judgment may be performed only by a Sheriff or court-appointed landlord and tenant officer.

   (2)     Any agreement between a landlord and tenant which purports to exempt the Landlord from the prohibitions of this Chapter 9-1600 or any penalty imposed hereunder shall be void and unenforceable.

§ 9-1604. Restoration of Possession.

   *(1)  Where the tenant alleges a violation of this Chapter, the tenant may contact the local police to obtain police assistance in regaining entry into the premises. It shall be the duty of the landlord or the landlord's agent to establish that the eviction action undertaken was lawful by making available to the Police Department a copy of the relevant writ of possession or by verifying the existence of the writ to the Police Department, the Sheriff or the court-appointed landlord-tenant officer for verification thereof. The Sheriff and/or the court-appointed landlord/tenant officers shall maintain records of all current executions of writs issued by the Court so that verification of legal process may be readily obtained. Where the landlord is unable to produce a copy of the relevant proof of lawful execution of a judgement of possession or other verification thereof, the tenant shall be entitled to regain possession of the premises immediately and the landlord shall be prohibited from blocking or inhibiting re-entry in any way.*

   *(2)  Any tenant who is restored possession of a premises as described under this Section, shall have the right to terminate the lease agreement without any penalty, including any early termination fees that may otherwise be applicable to such termination, within 30 days of being restored possession.*

§ 9-1605 Penalties.

   *(1)*           Any person who engages in the self-help eviction activities described in this Chapter or who assists in such activities shall be [subject to a fine or penalty of not less than one hundred (100) dollars nor more than three hundred (300) dollars, or to imprisonment not exceeding ninety (90) days for each offense.] *guilty of a Class III offense, and shall be subject to a fine as set forth in Section 1-109(3).*  Each day a violation continues or is permitted to continue shall constitute a separate offense for which a separate penalty shall be imposed. A violation shall cease when the unlawful conduct as set forth in paragraph [(1)(a)] *9-1601(1)(a)* ends or when the tenant no longer seeks to exercise his or her rights by regaining possession of said premises.

   (2)  *Private Right of Action. An individual who has been the victim of a self-help eviction practice prohibited under this Chapter 9-1600 shall have a private right of action against any landlord who violates Section 9-1603, directly or through an agent, and may recover, for each such violation, actual damages, reasonable attorneys' fees and court costs to the extent allowed by law, punitive damages not to exceed $2,000 per violation, and such other relief, including injunctive relief, as the court may deem appropriate. Provided that, for any self-help eviction practice that occurs after a tenant regains possession of the premises after a prior self-help eviction practice, or that occurs or continues after the Fair Housing Commission issues a finding or order determining that a self-help eviction practice had occurred, each day such subsequent self-help eviction practice continues shall be considered a separate violation for the purpose of determining the limit of punitive damages that may be recovered.  This subsection in no way limits the rights of private parties to*

**File #:** 200304, **Version:** 1

*pursue any legal rights and claims they may possess under a written agreement or any other applicable law.*

*(3) Subsequent or repeated violations, which are not committed contemporaneously with the initial violation, shall be treated as separate causes of action and shall be subject to separate award of damages under Section 9-1605 (2).*

* * *

SECTION 3.  This Ordinance shall be effective immediately.