**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

HAPCO

*Plaintiff*,

v.

City of Philadelphia and The Honorable James
Kenney

*Defendants*,

and

Tenant Union Representative Network and
Philadelphia Unemployment Project
*Proposed Defendant-*
*Intervenors.*

Civil Action No. 2:20-cv-3300

**ORDER**

AND NOW, this ____ day of _____, 2020, upon consideration of the

Tenant Union Representative Network (TURN) and Philadelphia Unemployment Project's

Motion for Leave to Intervene as Defendants, and any responses thereto, it is HEREBY

ORDERED that said motion is GRANTED. The Clerk of Court shall add the Tenant Union

Representative Network and Philadelphia Unemployment Project to the docket and amend

the caption accordingly.

BY THE COUIRT:

_____
J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HAPCO<br><br>*Plaintiff*,<br><br>v.<br><br>City of Philadelphia and The Honorable James Kenney<br><br>*Defendants*,<br><br>and<br><br>Tenant Union Representative Network and Philadelphia Unemployment Project<br><br>*Proposed Defendant-Intervenors*. | Civil Action No. 2:20-cv-3300 |

## MOTION FOR LEAVE TO INTERVENE AS DEFENDANTS

Pursuant to Federal Rules of Civil Procedure 24(a) and (b), the Philadelphia Tenant Union Representative Network (TURN) and Philadelphia Unemployment Project (PUP) hereby move the Court for leave to intervene in this proceeding as defendants. TURN and PUP seek intervention of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure. In the alternative, TURN and PUP seek permissive intervention under Rule 24(b)(2) of the Federal Rules of Civil Procedure. In support of this motion, TURN and PUP rely on the accompanying memorandum, which is incorporated herein as if fully set forth.

Respectfully submitted,

*/s/Rachel Garland*

Rachel Garland
Osarugue Osa-Edoh
Ian Charlton
George Gould
Community Legal Services
1424 Chestnut Street, 5th Floor
Philadelphia, PA 19102
Gosaedoh@clsphila.org
Icharlton@clsphila.org
Rgerland@clsphila.org
Telephone: 215-981-3778

*/s/ Irv Acklesberg*

Irv Acklesberg
Howard Langer
David Nagdeman
Langer, Grogan and Diver, P.C.
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
iackelsberg@langergrogan.com
hlanger@langergrogan.com
dnagdeman@langergrogan.com
Telephone: (215) 320-5701

*Counsel for Defendant-Intervenors*

Dated: July 8, 2020

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HAPCO<br><br>     *Plaintiff*,<br><br>  v.<br><br>City of Philadelphia and The Honorable James Kenney<br><br>     *Defendants*,<br><br>  and<br><br>Tenant Union Representative Network and Philadelphia Unemployment Project<br><br>     *Proposed Defendant-Intervenors.* | Civil Action No. 2:20-cv-3300 |

## MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

Pursuant to Federal Rules of Civil Procedure 24(a) and (b), Philadelphia's Tenants Union Representative Network (TURN), a not-for-profit entity which assists tenants in exercising their legal rights to ensure decent and affordable housing in Philadelphia; and Philadelphia Unemployment Project (PUP), a not-for-profit entity which organizes unemployed and low-income workers to access better social services and get assistance with job searches in Philadelphia, respectfully submit this memorandum in support of their Motion to Intervene.

**The Tenants Union Representative Network ("TURN")** is a nonprofit tenant membership organization in Philadelphia that advances and defends the rights and interests of tenants and people experiencing homelessness through advocacy, community education, and supportive services. Among other activities, it provides legal and resource information to individual tenants, conducts regular know-your-rights workshops for tenants, represents

individual tenants in court and administrative hearings, and supports tenant unions and tenant organizing. TURN also houses a membership Network consisting of current, former, and future tenants from across Philadelphia that meets monthly. The Network votes annually to determine TURN's advocacy and legislative priorities. TURN has worked on legislative and judicial issues regarding the rights of tenants at the local, state, and federal levels.

**The Philadelphia Unemployment Project ("PUP")** is a nonprofit organization that organizes low-income and unemployed Philadelphians to fight for economic justice. PUP seeks to bring diverse Philadelphians together to effectuate major changes that benefit millions of unemployed and impoverished people. PUP provides housing information, legal referrals, employment readiness and assistance to Philadelphia county residents and others in need of those services. PUP believes that once organized, working people and the unemployed can be a powerful voice in the city, state, and nation.

In this action, the Plaintiffs are seeking to overturn a handful of Philadelphia ordinances, known collectively as the Emergency Housing Protections Act ("EHPA"), which, in sum, preclude landlords from taking steps in furtherance of recovery of possession of residential properties through August 31, 2020, require mandatory conciliation conferences prior to eviction proceedings, provide tenants the right to enter mandatory nine-month repayment arrangements for arrears that accrued during the COVID-19 Emergency Period (hereafter "Emergency Period"), which ends August 31, 2020, and prevent landlords from collecting late fees from tenants who suffered financial harm due to COVID-19 during the Emergency Period. TURN and PUP seeks to intervene to defend the law because of the very real risk that a victory by the Plaintiffs will result in the disruptive displacement and homelessness of countless low-income Philadelphians and people of color in the midst of a

pandemic, just as millions of dollars of rental assistance become available to those same

Philadelphians to assist with housing stabilization.[1] A victory by the Plaintiff would thus

needlessly exacerbate the current public health crisis in the City of Philadelphia. Furthermore,

the Plaintiff's motion is procedurally and substantively deficient.

## I.      BACKGROUND

Philadelphia's Municipal Landlord Tenant Court processes over 18,000 eviction filings

annually with approximately 150 eviction cases scheduled daily in Municipal Court, Courtroom

3.  On May 1, 2020 in response to the COVID-19 pandemic, which resulted in a four-decade

record unemployment rate of over 15% in Pennsylvania[2], City Councilmembers introduced a

package of legislation collectively titled the Emergency Housing Protections Act to stabilize

rental housing and prevent mass evictions.  On June 18, 2020 the Emergency Housing

Protections Act passed unanimously in City Council after weeks of negotiation and compromise

with landlord and tenant advocates.  The EHPA was signed into law by the Mayor on July 1,

2020.  The Plaintiffs filed the instant action on July 6, 2020. The hearing on the Plaintiff's

motion for a temporary restraining order and permanent injunction has yet to occur. No other

motions have been considered by the Court.

Proposed intervenors, TURN and PUP are seeking to intervene to assert the particular

interests of their members and clients. Together, TURN and PUP serve thousands of working-

class, low-income, and unemployed tenants of Philadelphia, many of whom live in the

communities most profoundly affected by the COVID-19 pandemic. As organizations engaged in

---

[1] Charlotte Keith, *Philadelphia Inquirer, Evictions Loom Large as Pa. Renter Relief Program Stumbles, Lacks Spanish-Language Application*, July 8, 2020, *available at*: https://www.inquirer.com/health/coronavirus/spl/rental-assistance-pennsylvania-coronavirus-program-spanish-applications-20200708.html.
[2] Philadelphia Inquirer, *Jobless Rate Slides Back from Pandemic Peak in Pennsylvania*, June 19, 2020, *available at*: https://www.inquirer.com/wires/ap/jobless-rate-slides-back-pandemic-peak-pennsylvania-20200619.html.

mass "frontline response" in their communities —addressing not only housing issues but access to food, medicine and health services, household goods, and other basic necessities— TURN and PUP are uniquely positioned to explain and contextualize the social and economic conditions of their members and client base that inform the need for enacting the Emergency Housing Protections Act. Staff and volunteers from TURN regularly provide advice and workshops to its membership and community members about all stages of the eviction process, and its members are well acquainted with the challenges of eviction procedures in court, which tend to pack hundreds of people into congested areas of the courthouses, many of whom are people of color, immunocompromised, elderly, people with disabilities, or otherwise especially vulnerable to serious illness from the novel coronavirus. For similar reasons, TURN and PUP are also well-acquainted with the public health impact of displacement.

## II. ARGUMENT

As discussed below, the Federal Rules of Civil Procedure entitle TURN and PUP to intervene as a matter of right. The motion is timely, TURN and PUP possess legally cognizable interests that may be impaired by the litigation, and its interests may not otherwise be adequately represented. In the alternative, permissive intervention is warranted.

### A.    TURN is Entitled to Intervene As of Right

Rule 24(a) of the Federal Rules of Civil Procedure entitles TURN to intervene as a matter of right:

> **Intervention of Right.** On timely motion, the court must permit anyone to intervene who … (2) claims an interest relating to the property of transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

In the Third Circuit, to intervene under Rule 24(a)(2), a movant must establish: "1) a timely application for leave to intervene, 2) a sufficient interest in the underlying litigation, 3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and 4) that the existing parties to the action do not adequately represent the prospective intervenor's interests." *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005) (citing *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998)). The movant must satisfy all four requirements. *Id.* (quoting *Mountain Top Condo. Assoc. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995)). Article III standing is not a prerequisite for intervention as a matter of right. *See King v. Governor of N.J.*, 767 F.3d 216, 245 (3d Cir. 2014) ("If the plaintiff that initiated the lawsuit in question has Article III standing, a 'case' or 'controversy' exists regardless of whether a subsequent intervenor has such standing.").

### 1. The Motion is Timely

The Third Circuit has established three factors for courts to consider when determining whether an intervention motion is timely: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Benjamin v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 949 (3d Cir. 2012) (quoting *Mountain Top*, 72 F.3d at 369). "The delay should be measured from the time the proposed intervenor knows or should have known of the alleged risks to his or her rights or the purported representative's shortcomings." *Id.* at 950. "[T]he critical inquiry is: what proceedings of substance on the merits have occurred?" *Mountain Top*, 72 F.3d at 369.

The proceedings here are at a very early stage, and the intervention of TURN and PUP cannot cause any prejudice to the parties. The Plaintiffs filed the complaint on July 6, 2020, merely two days prior to the instant motion. The hearing on the Plaintiffs' motion for a

temporary restraining order and permanent injunction has yet to occur. No other motions have been considered by the Court, and therefore intervention does not delay the litigation. The only effect of the intervention is that TURN and PUP will have the opportunity to participate in briefing and hearings to advance its view of the law and facts that the Plaintiffs have already placed into issue.

### 2. TURN and PUP Possess a Legally Cognizable Interest

A proposed intervenor must show "a tangible threat to a legally cognizable interest." *Mountain Top*, 72 F.3d at 366. That interest is one that is "specific [to those seeking to intervene], is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Kleissler*, 157 F.3d at 972, *see also In re Sierra Club*, 945 F.2d 776, 779–80 (4th Cir. 1991) (in its defense of state environmental regulation, state agency may not be adequate representative of Sierra Club's interests due to its legal obligation to represent all citizens of the state, not merely those most concerned with environmental issues). These are not rigid requirements. Rather, "Rule 24 demands flexibility when dealing with the myriad situations in which claims for intervention arise." *Id*. Proposed intervenors, for example, need not possess an interest in each and every aspect of the litigation. *Mountain Top*, 72 F.3d at 368. "They are entitled to intervene as to specific issues so long as their interest in those issues is significantly protectable." *Id*. Ultimately, the question is whether the proposed intervenor 'will be practically disadvantaged by the disposition of the action, '" *Benjamin*, 701 F.3d at 951 (quoting *Kleissler*, 157 F.3d at 970), and the "polestar" for intervention is "whether the proposed intervenor's interest is direct or remote." *Kleissler*, 157 F.3d at 972.

TURN's mission is to advocate for and educate Philadelphia tenants on their rights regarding safe, affordable and habitable rental housing. PUP organizes around issues of

recession, housing, commuter options, minimum wage, and protecting the safety net to serve

unemployed and low-income workers of Philadelphia. Moreover, intervention has been

permitted on a broad range of housing matters. *See, e.g.*, *Society Hill Civic Ass'n v. Harris*, 632

F.2d 1045 (3rd Cir. 1980) (granting intervention to tenants in a suit by the local civic

association against HUD and the Redevelopment Authority); *Philadelphia Housing Authority v.*

*U.S. Dept. of Housing and Urban Development*, 86 F.R.D. 448 (E.D. Pa. 1980) (granting

intervention to named tenants, a tenant council and PGW in a suit for injunctive and declaratory

relief by the local housing authority against HUD); s*ee also 440 Co. V. Borough of Ft. Lee*, 950

F.Supp 105 (D.N.J. 1996) (granting leave for tenant association to intervene in landlords' suit

against the city seeking declaration that rent control ordinance was unconstitutional) and *515*

*Associates v. City of Newark*, 424 F.Supp 984 (D.N.J. 1977) (allowing tenants to intervene in

suit by landlord challenging actions taken by city rent control board). Here, the specific interest

to be protected is to ensure that stabilizing measures are upheld to support unemployed and

low-income tenants at risk for mass evictions due to the COVID-19 pandemic.

### 3.   This Interest May be Impaired By the Litigation

TURN, PUP, and its respective members will suffer substantial harm if intervention is

not granted. The Plaintiffs' complaint directly implicates the rights of tenants, unemployed, and

low-income working residents of Philadelphia. If the Emergency Housing Protections Act is not

enforced, tenants will face mass evictions, further exacerbating the public health crisis and racial

inequalities.  Both TURN and PUP speak directly to the need for the Emergency Housing

Protections Act as a stabilizing measure against devastating consequences in three intersecting

areas: public health, racial inequality and housing insecurity.

As the members of TURN and PUP are acutely aware, housing instability is a public

health crisis – one that affects low-income families and Black Philadelphians at an increased rate. Philadelphia has the fourth highest eviction rate among large cities, with one out of every fourteen renters facing eviction each year.[3] In 2019, the eviction rate in areas with at least 40% Black residents was more than two times higher than in areas where the population was less than 10% Black residents.[4] In fact, as the population of Black residents increased in a Philadelphia neighborhood, so did the eviction rate. Housing instability also disproportionately affects low-income renters. In 2019, 14,480 evictions were filed against Philadelphians whose household income was $45,000 or less, compared to 4,804 eviction filings against people with household incomes of more than $45,000.[5]

Low-income and Black Philadelphians who experience eviction are also saddled with the negative health effects of displacement, both physically and psychologically. Families who are evicted, or have an eviction on their rental record, are more likely to accept substandard living conditions containing indoor health hazards, such as dust (lead, particulate matter, mold, pet and pest allergens, insects), gas (cigarette smoke, radon, carbon monoxide), water (moisture and polluted sources), and structural deficiencies.[6] These hazards contribute to health conditions like asthma, lead poisoning, elevated blood pressure, developmental delays, heart disease, and exposure to communicable diseases. Additionally, families that lack residential stability have more difficulty accessing psychological stability, which allows people to place an emotional

---

[3] The Reinvestment Fund, Policy *Brief: Evictions in Philadelphia: A Data & Policy Update* (October 2019) *available at* https://www.reinvestment.com/wp-content/uploads/2019/10/ReinvestmentFund__PHL-Evictions-Brief-Oct-2019.pdf, page 7, figure 9.
[4] Reinvestment Fund, *Policy Brief: Evictions in Philadelphia: A Data & Policy Update* (2019) *available at* https://www.reinvestment.com/wp-content/uploads/2019/10/ReinvestmentFund__PHL-Evictions-Brief-Oct-2019.pdf.
[5] *Id*. at page 8, figure 10
[6] Allyson E. Gold, *No Home for Justice: How Eviction Perpetuates Health Inequity Among Low-Income and Minority Tenants,* 24 Georgetown J. Poverty L. & Pol'y 1 (2016).

investment in their homes, social relationships, and community.[7] Lack of residential stability decreases school stability for children, and decreases the likelihood that students will excel in their studies and graduate.[8] Women who are forced to leave their homes are at significantly greater risk of depression.[9] Finally, being evicted in housing court has been shown to increase the probability of being hospitalized for a mental health diagnosis in the two years after filing by 9 percentage points.[10]

The nexus of public health, racial inequality, and housing insecurity has been amplified during the COVID-19 pandemic. In Pennsylvania, although Black residents account for 11.3% of the state's population, Black residents represent almost one-third of the COVID-19 cases where the race of the patient was recorded. Black Pennsylvanians represented 30% of the deaths where the race of the victim was known.[11] In Philadelphia, Black patients are dying from COVID-19 at a rate of 4.1 for every 10,000 people – more than thirty percent higher than the death rate among white patients.[12] These disparities have been linked both to more limited access to health care in Black communities, and to racial segregation pushing Black people into crowded and substandard housing.[13]

---

[7] Matthew Desmond, Rachel Tolbert Kimbro, *Eviction's Fallout: Housing, Hardship, and Health,* Social Forces (2015).
[8] *Id.*
[9] Theresa Osypuk et al., *The Consequences of Foreclosure for Depressive Symptamatology*, 22 Annals of Epidemiology 379-87 (2012)
[10] Collinson, Robert and Davin Reed. The Effects of Evictions on Low-Income Households (December 2018).
[11] Ryan Briggs, *Racial Disparity Grows as the Coronavirus Disproportionately Claims Black lives in Pa., Jersey and Delaware* May 15, 2020 available at https://whyy.org/articles/racial-disparity-grows-as-the-coronavirus-disproportionately-claims-black-lives-in-pa-jersey-and-delaware/.
[12] Sarah Gantz and Wendy Ruderman, *Coronavirus has Exposed Deep Race Inequity in Health Care. Can Philadelphia Change the Trend?* The Philadelphia Inquirer. May 2, 2020 *available at*: https://www.inquirer.com/health/coronavirus/coronavirus-covid-19-race-disparities-african-american-hispanic-deaths-20200502.html.
[13] Ryan Briggs, *Racial Disparity Grows as the Coronavirus Disproportionately Claims Black lives in Pa., Jersey and Delaware*. WHYY.org May 15, 2020 *available at*: https://whyy.org/articles/racial-disparity-grows-as-the-coronavirus-disproportionately-claims-black-lives-in-pa-jersey-and-delaware/

The provisions of the Emergency Housing Protections Act address the public health crises of both eviction and COVID-19, and their lasting impact on low-income and Black residents. The Act's provisions seek to stop the compounding of *two* public health crises on the most vulnerable Philadelphians. As the members of TURN and PUP can attest, this interest is direct, tangible, and significantly protectable.

### 4. The Defendants May Not Adequately Represent the Interests of TURN and PUP

Although intervention as of right requires the movant to establish inadequacy of representation, the Third Circuit has stated that "the burden of making that showing should be treated as minimal." *Benjamin*, 701 F.3d at 958. "Moreover, an intervenor need only show that representation *may* be inadequate, not that it is inadequate." *Am. Farm*, 278 F.R.D. at 110 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538, n.10 (1972); *Kleissler*, 157 F.3d at 972). *See also In re Sierra Club*, 945 F.2d 776, 779–80 (4th Cir. 1991) (in its defense of state environmental regulation, state agency may not be adequate representative of Sierra Club's interests due to its legal obligation to represent all citizens of the state, not merely those most concerned with environmental issues "The possibility that the interests of the applicant and the parties may diverge 'need not be great' in order to satisfy the minimal burden." *Kleissler*, 157 F.3d at 972 (quoting *Utah Assoc. of Counties*, 255 F.3d at 1254).

The Third Circuit has held that a government agency's duty to serve the broad public interest can preclude it from adequately representing a particular group of citizens. *See Kleissler*, 157 F.3d at 973-74 (noting that "the government represents numerous complex and conflicting interests in matters of this nature" and "[t]he straightforward . . . interests asserted by intervenors here may become lost in the thicket of sometimes inconsistent governmental policies").

TURN and PUP are confident that Defendants City of Philadelphia and the Honorable James Kenney, will fairly and adequately defend this litigation; however, TURN has a particular interest in preserving validly-adopted laws that enact protections for its tenant membership and the tenants its serves and PUP has a specific interest in preserving these same laws that afford its unemployed and low-income working clients with protection from homelessness amidst a global pandemic. The City of Philadelphia does not and cannot give specific representation to the particular interests of unemployed and low-income tenants of Philadelphia. If the Court were to rule against the City, the City may not appeal the decision, and TURN and PUP would be without recourse to enforce and defend the sound policy behind the laws. Unless intervention is granted, the movants will have no ability or opportunity to ensure that the Emergency Housing Protections Act remains in force and low-income tenants in Philadelphia remain protected from a tsunami of evictions.

### B. Alternatively, Permissive Intervention is Warranted

Even where intervention as of right is unavailable, Rule 24(b)(1)(B) provides that, "[o]n timely motion, the court may permit anyone to intervene who . . .has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

"In deciding whether to permit intervention under Rule 24(b), 'courts consider whether the proposed intervenors will add anything to the litigation.'" *Am. Farm*, 278 F.R.D. at 111 (quoting *Kitzmiller*, 229 F.R.D. at 471). TURN and PUP allege that the Emergency Housing Protections Act protects both tenants and landlords from the economically destabilizing effects of eviction as well as the emotional trauma of evictions for families

already disproportionately harmed by the COVID-19 pandemic.

As discussed above, intervention will neither unduly delay the proceedings nor prejudice the adjudication of the original parties' rights. Instead, TURN and PUP bring a perspective that differs from both the Plaintiffs' and Defendant's, and may clarify issues that those parties would overlook. TURN and PUP respectfully submit that their participation will aid the Court in resolving the issues in the case.

## II.   CONCLUSION

TURN and PUP meet the criteria for intervention as a matter of right under Rule 24(a)(2) and permissive intervention under Rule 24(b). Accordingly, it respectfully requests that this Court grant its motion to intervene as a matter of right or, in the alternative, permissively.


Respectfully submitted,

*/s/Rachel Garland*
Rachel Garland (Pa. Bar No. 202649)
Osarugue Osa-Edoh (Pa. Bar No. 323679)
Ian Charlton (Pa. Bar No. 324750)
George Gould (Pa. Bar No. 12549)
Community Legal Services
1424 Chestnut Street, 5th Floor
Philadelphia, PA 19102
Gosaedoh@clsphila.org
Icharlton@clsphila.org
Rgerland@clsphila.org
Telephone: 215-981-3778

*/s/ Irv Acklesberg*
Irv Acklesberg (Pa. Bar No. ??)
Howard Langer (Pa. Bar No. ??)
David Nagdeman (Pa. Bar No. ??)
Langer, Grogan and Diver, P.C.
1717 Arch Street, Suite 4020
Philadelphia, PA 19103

iackelsberg@langergrogan.com
hlanger@langergrogan.com
dnagdeman@langergrogan.com
Telephone: (215) 320-5701

*Counsel for Defendant-Intervenors*

Dated: July 8, 2020

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| |
|---|
| HAPCO |
| *Plaintiff,* |
| v. |
| City of Philadelphia and The Honorable James Kenney |
| *Defendants,* |
| and |
| Tenant Union Representative Network and Philadelphia Unemployment Project |
| *Proposed Defendant-Intervenors.* |

Civil Action No. 2:20-cv-3300

## RULE 7.1 DISCLOSURE STATEMENT

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, the undersigned certifies that the nongovernmental corporate party, TURN and PUP in the above listed civil action do not have any parent corporations and publicly held corporations that owns 10% or more of its stock.

Respectfully submitted,

*/s/Rachel Garland*
Rachel Garland
Osarugue Osa-Edoh
Ian Charlton
George Gould
Community Legal Services
1424 Chestnut Street, 5th Floor
Philadelphia, PA 19102
Gosaedoh@clsphila.org
Icharlton@clsphila.org

Rgerland@clsphila.org
Telephone: 215-981-3778

*/s/ Irv Acklesberg*
Irv Acklesberg
Howard Langer
David Nagdeman
Langer, Grogan and Diver, P.C.
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
iackelsberg@langergrogan.com
hlanger@langergrogan.com
dnagdeman@langergrogan.com
Telephone: (215) 320-5701

*Counsel for Defendant-Intervenors*

Dated: July 8, 2020

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HAPCO<br><br>*Plaintiff*,<br><br>v.<br><br>City of Philadelphia and The Honorable James Kenney<br><br>*Defendants*,<br><br>and<br><br>Tenant Union Representative Network and Philadelphia Unemployment Project<br><br>*Proposed Defendant-Intervenors*. | Civil Action No. 2:20-cv-3300 |

## CERTIFICATE OF SERVICE

I, Rachel Garland, certify that on July 8, 2020, that I served Defendant Intervenor's Motion to Intervene on the following counsel of record, via ECF:

Colin D. Dougherty, Esq.
Michael K. Twersky, Esq.
FOX ROTHSCHILD LLP
10 Sentry Parkway, Suite 200
P.O. Box 3001
Blue Bell, PA 19422-3001

Paul Jay Cohen, Esq.
COHEN MARRACCINI, LLC
660 Second Street Pike
Southampton, PA 18966

Todd L. Baritz, Esq.
Kenneth L. Baritz & Associates, P.C.
100 S. Broad Street
Suite 1205
Philadelphia, PA 19102

*Counsel for Plaintiffs*

Diana P. Cortes
City of Philadelphia Law Department
1515 Arch Street, 17th Floor
Philadelphia, PA 19102

*Counsel for Defendants*


Respectfully submitted,

<u>*/s/Rachel Garland*</u>
Rachel Garland
Osarugue Osa-Edoh
Ian Charlton
George Gould
Community Legal Services
1424 Chestnut Street, 5th Floor
Philadelphia, PA 19102
Gosaedoh@clsphila.org
Icharlton@clsphila.org
Rgerland@clsphila.org
Telephone: 215-981-3778

<u>*/s/ Irv Acklesberg*</u>
Irv Acklesberg
Howard Langer
David Nagdeman
Langer, Grogan and Diver, P.C.
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
iackelsberg@langergrogan.com
hlanger@langergrogan.com
dnagdeman@langergrogan.com
Telephone: (215) 320-5701

*Counsel for Defendant-Intervenors*

Dated: July 8, 2020